| UNITED STATES DISTRICT COURT | NOT FOR PUBLCIATION |
|---|---|
| EASTERN DISTRICT OF NEW YORK | |

-----------------------------------------------------------------------X

BUILDERS BANK,

     *Plaintiff,*           MEMORANDUM
                      AND ORDER
  -against-             09-CV-3935 (JG)(LB)
                      09-CV-4410 (JG)(LB)

CHARM DEVELOPMENTS II, LLC, RALPH
MOREA, SR., ANTOINETTE MOREA, RALPH
MOREA, JR., and NEW YORK CITY TRANSIT
ADJUDICATION BUREAU,

     *Defendants.*

-----------------------------------------------------------------------X

A P P E A R A N C E S:

  LAW OFFICES OF RICHARD D. GROSSMAN
  225 West Wacker Drive
  Chicago, Illinois 606060
  *Attorney for Defendants*

  THE MARANTZ LAW FIRM
  150 Theodore Fremd Avenue
  Rye, New York 10580
  By: Neil G. Marantz
  *Attorneys for Defendants*

JOHN GLEESON, United States District Judge:

    On September 11, 2009, Builders Bank (the "Bank") filed this foreclosure action against the defendants, alleging that among other things Charm had defaulted on three mortgages taken out with the Bank in order to purchase and develop real property in Brooklyn, New York. On July 9, 2010, the plaintiff filed its motion for summary judgment. The defendants opposed the motion, and I heard argument on August 20, 2010. For the reasons stated below, the motion for summary judgment is denied.

## BACKGROUND

    For the purposes of the instant motion, I accept the undisputed facts as true and

resolve disputed facts in favor of the non-moving party where there is evidence to support its allegations.

In December 2005, Charm executed a mortgage in the amount of $1,000,000 in favor of the Bank. *Mortgage, Security Agreement, and Fixture Filing*, Ex. A to Pl.'s 56.1 Stmt. In August 2007, Charm borrowed an additional $3,000,000 from the Bank. *Building Loan Mortgage, Security Agreement*, and Fixture Filing, Ex. B. to Pl.'s 56.1 Stmt. In March 2009, a third mortgage in the amount of $860,000 was executed by Charm in favor of the Bank. *Building Loan Mortgage, Security Agreement, and Fixture Filing*, Ex. C to Pl.'s 56.1 Stmt. A building loan note was executed for each of the three mortgages. *Building Loan Note*, Exs. D, E, F to Pl.'s 56.1 Stmt. Ralph Morea, Jr. ("Morea"), the principal of Charm, acted as a guarantor of the loans along with his parents, Ralph Morea, Sr. and Antoinette Morea. *Guaranty of Payment and Completion*, Ex. G to Pl.'s 56.1 Stmt. By later agreement, the maturity date for each of the notes was changed to February 5, 2010. *Note and Mortgage Modification Agreement* and *Building Loan Note*, Ex. F to Pl.'s 56.1 Stmt. All three mortgage documents contain an acceleration clause, which states: "If an Event of Default occurs, Lender may, at its option, declare the whole of the Indebtedness to be immediately due and payable without further notice to Borrower, with interest thereon accruing from the day of such Event of Default until paid at the Default Rate." *Mortgage Agreements* at ¶ 16, Exs. A, B, and C to Pl.'s 56.1 Stmt. The loan documents further required that Charm make its best efforts to substantially complete construction by July 31, 2009.

In its motion for summary judgment, the Bank alleges that Charm failed to repay the loans by their maturity date of February 5, 2010. Pl.'s Br. at 2-3. In its opposition to the motion, Charm contends that its obligation to repay was excused by a prior material breach by

2

the Bank. Specifically, in early September 2009, the Bank declared the loans in default and locked Charm out of the project, claiming there had not been substantial completion of the project by the date specified in the loan documents. *See Email from Saywitz to Morea,* Sept. 1, 2009, Ex. 2 to Morea Aff. Charm alleges that the alleged basis for the default was false and made in bad faith. Def. Br. at 3-4. As mentioned, Charm argues that this material breach of the loan agreements excused Charm's obligation to make further payments.

## DISCUSSION

A.  *The Summary Judgment Standard of Review*

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also e.g.*, *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 61 (2d Cir. 2002). The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs.*, *Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir. 1994). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). Therefore, although a court "should review the record as a whole, it must disregard all evidence favorable to

3

the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000). However, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must … set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586. Nor will "conclusory statements, conjecture, or speculation" by the nonmoving party defeat the motion. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Summary judgment is proper when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24 (citations omitted).

1. *Charm's Default on the Mortgages*

"Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the Note and Mortgage are produced to the Court along with proof that the Mortgagor has failed to make payments due under the Note." *Regency Sav. Bank, F.S.B. v. Merritt Park Lands Associates*, 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001). Here, the Bank has produced the three mortgages and accompanying notes as well as sufficient proof that Charm failed to repay the loans by the maturity date of February 5, 2010. Accordingly, the Bank has established a *prima facie* case for foreclosure on all three mortgages.

Once the mortgagee's *prima facie* case is established, the mortgagor must make "an affirmative showing" that a defense to the action exists. *Id.* at 466. Charm contends that its

4

obligation to repay the loans in February 2010 was excused by the Bank's material breach of the loan agreements five months earlier. Specifically, Charm contends that it was locked out of the construction project after the Bank improperly declared the mortgages in default on September 1, 2009. The default had been declared because the construction had not been substantially completed by July 31, 2009. Def. Br. at 3-4; Def.'s 56.1 Stmt ¶ 7-9. But Charm alleges, citing the text of its loan agreement with the Bank, that it was required only to use its *best efforts* to substantially complete construction by July 31, 2009 and that it did, in fact, do so. Therefore, Charm contends that the declaration of default and the removal of Charm from the project were in bad faith and constituted a material breach of the loan agreements, which excused Charm's obligation to repay the loan by the maturity date. Def. Br. at 3-4; Def.'s 56.1 Stmt ¶ 7-9.

Based on the submissions, I conclude that there is a genuine issue of material fact as to whether the Bank materially breached the loan agreements by defaulting on the loan in bad faith in September of 2009. Accordingly, the motion for summary judgment is denied. Although there were significant procedural deficiencies in the defendants' Rule 56.1 Statement, I find these deficiencies do not warrant granting summary judgment in this case.

## CONCLUSION

For the reasons stated above, the plaintiff's motion is denied.


So ordered.


John Gleeson, U.S.D.J.


Dated: August 30, 2010
      Brooklyn, New York